## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| HAMID MOHAMMED TAHERI | * |
| | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * Case No. 24-C-16-006668 |
| | * |
| STATE EMPLOYEES CREDIT UNION OF | * |
| MARYLAND, INCORPORATED | * JURY TRIAL REQUESTED |
| | * |
| and | * |
| | * |
| AUTO SOURCE I LLC | * |
| 6435 PULASKI HIGHWAY | * |
| BALTIMORE, MD 21205 | * |
| | |
| SERVE ON: | * |
| MOHAMMAD SIASI | * |
| 3700 TOONE STREET | * |
| BALTIMORE, MD 21224 | * |
| | * |
| MOHAMMAD SIASI | * |
| 3700 TOONE STREET | * |
| BALTIMORE, MD 21224 | * |
| | * |
| SERVE ON: | * |
| MOHAMMAD SIASI | * |
| 3700 TOONE STREET | * |
| BALTIMORE, MD 21224 | * |
| Defendants. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### AMENDED COMPLAINT AND PRAYER FOR JURY TRIAL

Plaintiff Hamid Mohammed Taheri ("TAHERI"), by and through his undersigned attorney Cory L. Zajdel of Z Law, LLC brings this Complaint that alleges and states as follows:

### I.    INTRODUCTION

1.    This is a Complaint against Defendants State Employees Credit Union of Maryland, Incorporated ("SECU"), Auto Source I LLC ("Auto Source") and Mohammad Siasi

("SIASI") for violating common law and statutory rights governing the purchase of motor vehicles and the collection of debts.

2.     This law suit seeks to compensate TAHERI for the actual damages and emotional distress caused by Auto Source and SIASI's actions in stealing TAHERI's identity, impersonating TAHERI and causing TAHERI out of pocket losses in opening a membership and multiple accounts with SECU on TAHERI's behalf and without TAHERI's permission.

3.     This law suit also seeks to compensate TAHERI for the actual damages and emotional distress caused by SECU'S collection efforts, to reaffirm Maryland's convictions in protecting personal property by declaring that SECU has no security interest in the TAHERI's motor vehicle and that no financing contract exists between TAHERI and SECU.

**II.    PARTIES**

4.     Plaintiff TAHERI is a person who resides in Virginia.

5.     Defendant SECU is a Maryland corporation principally engaged in the business of consumer banking within the state of Maryland and has its principal place of business is located at 971 Corporate Boulevard, Linthicum, MD 21090.

6.     At all times relevant hereto, SECU regularly transacted business in Maryland and has numerous branches throughout Maryland.

7.     Defendant Auto Source is a Maryland limited liability company principally engaged in the business of selling motor vehicles to consumers within the state of Maryland and has its principal place of business located at 6435 Pulaski Highway, Baltimore, MD 21205.

8.     SIASI is a person that owns and operates Auto Source out of a business located in Baltimore County and resides in Baltimore City located at 3700 Toone Street, Baltimore, MD 21224.

III.  **JURISDICTION AND VENUE**

9.    This Court has subject matter jurisdiction over Plaintiff's claims under MD. CODE ANN., CTS. & JUD. PROC. § 1-501.

10.   This Court has personal jurisdiction over SECU, Auto Source and SIASI because they systematically and continually transact business in Maryland and the case arises out of transactions and actions conducted within Maryland.

11.   Venue is proper because Defendant SIASI resides in Baltimore City and SECU regularly transacts business in Baltimore City.

IV.   **FACTS APPLICABLE TO ALL COUNTS**

A.    *TAHERI Purchases a Motor Vehicle From SIASI and Auto Source*

12.   TAHERI entered into a verbal agreement to purchase a 2012 Honda Odyssey motor vehicle with vehicle identification number 5FNRL5H95CB041132 with eighty six thousand seven hundred thirty two (86,732) miles on the odometer from SIASI and Auto Source in 2015.

13.   TAHERI did not execute a purchase order related to the purchase of the motor vehicle.

14.   TAHERI did not execute a retail installment sale contract related to the purchase of the motor vehicle.

15.   TAHERI did not agree to pay any interest on the purchase of the motor vehicle.

16.   TAHERI did not agree to pay any additional fees, taxes, services, insurances or any other amount other than the purchase price.

17.   TAHERI's verbal agreement to purchase the motor vehicle was for personal, family and household purposes.

B.    *TAHERI's Relationship with SECU*

18.    TAHERI never requested to become a member of SECU.

19.    TAHERI never applied to become a member of SECU.

20.    TAHERI never entered into any contracts with SECU.

21.    SECU has never requested or captured TAHERI's signature.

22.    SECU never requested that SECU run his credit report for any purpose.

23.    SECU contacted TAHERI claiming to be the creditor to TAHERI's motor vehicle purchase.

24.    SECU is claiming a security interest in TAHERI's motor vehicle.

25.    SECU is now attempting to collect directly from TAHERI.

26.    SECU asserts that it extended a loan to TAHERI totaling more than twenty nine thousand dollars ($29,000.00).

27.    SECU asserts that the interest rate on the alleged loan accrues at 3.99%.

28.    SECU asserts that TAHERI's monthly payment obligation under the alleged loan is five hundred fifty one dollars and thirty eight cents each month ($551.38/month).

29.    On information and belief, SECU is not in possession of any document signed by TAHERI related to the motor vehicle.

30.    One information and belief, SECU is not in possession of any document providing SECU with a security interest in the motor vehicle.

31.    SECU contacted TAHERI in an attempt to collect the alleged debt and asserted that if payment was not brought current that SECU would repossess the motor vehicle.

32.    TAHERI has made payments in protest to SECU because he needs the vehicle to travel to and from work and was concerned that SECU would steal his motor vehicle from him if

4

he did not make the payments SECU was demanding.

33.     As a proximate result of SECU's actions, TAHERI paid SECU monies SECU was not entitled to demand or receive and has placed a stain on the title to the motor vehicle.

C.     *The Actions of SIASI*

34.     Without the knowledge of TAHERI, on information and belief, SIASI visited a SECU branch location in an attempt to open a SECU membership account on behalf of TAHERI.

35.     Without the knowledge of TAHERI, on information and belief, SIASI signed a membership agreement with SECU on behalf of TAHERI.

36.     Without the knowledge of TAHERI, on information and belief, SIASI impersonated TAHERI on several other occasions in conversations and in person meetings with SECU.

37.     Without the knowledge of TAHERI, on information and belief, SIASI visited a SECU branch in August 2015 and filled out a loan application to purchase a motor vehicle while impersonating TAHERI.

38.     Without the knowledge of TAHERI, on information and belief, SIASI signed a loan application using TAHERI's name and gave permission to pull TAHERI's credit.

39.     Without the knowledge of TAHERI, on information and belief, SECU issued a check to TAHERI for the purchase of a motor vehicle due to the representations and statements made by SIASI and handed the check to SIASI.

40.     Without the knowledge of TAHERI, on information and belief, SIASI filled in portions of the check including identifying the motor vehicle being sold as a 2011 Honda Odyssey with vehicle identification number 5FNRL5H96BB059976 and forty seven thousand one hundred ninety three (47.193) miles on the odometer.

5

41.     Without the knowledge of TAHERI, on information and belief, SIASI made the check payable to Auto Source I in the amount of twenty nine thousand eight hundred ninety six dollars ($29,896.00).

42.     Without the knowledge of TAHERI, on information and belief, SIASI signed the back of the check on behalf of TAHERI.

43.     Without the knowledge of TAHERI, on information and belief, SIASI also signed the back of the check on behalf of Auto Source.

44.     Without the knowledge of TAHERI, on information and belief, SIASI negotiated the check and deposited the money in a bank account owned by either Auto Source or SIASI.

45.     SIASI delivered a 2012 Honda Odyssey with vehicle identification number 5FNRL5H95CB041132 to TAHERI with Washington state dealer license plates that expire the last day of December 2016.

46.     SIASI has never provided TAHERI with a certificate of title to the 2012 Honda Odyssey and TAHERI is not able to register the vehicle with the Maryland Motor Vehicle Administration due to SIASI's failure to provide TAHERI with any documentation related to the motor vehicle.

V.     **CAUSES OF ACTION**

**COUNT ONE**
**(DECLARATORY AND INJUNCTIVE RELIEF)**

47.     Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

48.     This claim for declaratory relief is brought under the *Maryland Declaratory Judgment Act*, MD. CODE ANN., CTS. & JUD. PROC. § 3-406, to settle and obtain relief from

6

uncertainty and insecurity with respect to the rights, status and legal relations related to the motor vehicle TAHERI purchased and SECU's claim to a security interest and demands for payment.

49.    SECU maintains that it has a security interest in the motor vehicle and that TAHERI must pay SECU more than $29,000.00 including interest, costs, fees and other service charges related to financing allegedly provided by SECU to TAHERI.

50.    TAHERI receives monthly account statements demanding payment on the motor vehicle and has received a collection letter from SECU demanding payment of the alleged outstanding loan balance which threatened repossession of the motor vehicle if complete and timely payment was not received by SECU.

51.    Moreover, SECU also notifies credit reporting agencies to which it reports (including Equifax, TransUnion and Experian) of the alleged balances due, thereby damaging the credit scores and history of TAHERI.

52.    These practices continue and will continue unless and until this Court declares and affirms that SECU does not have a security interest in the motor vehicle and has no right to demand payment or collect any amounts from TAHERI.

53.    This presents an actual, judicable controversy between the parties.

54.    TAHERI has a right to be free from SECU's attempts to collect any amount related to the motor vehicle which SECU has no right to collect.

55.    TAHERI also has a right to have a clean title to his personal property without the cloud on title SECU has permanently asserted.

56.    The benefits to TAHERI in obtaining an injunction outweighs any potential harm SECU would incur as a result of an injunction, under the balance of convenience test, as SECU

has no legal or contractual right to collect any amounts from TAHERI, and TAHERI would greatly benefit from being relieved of SECU's actions.

57.     TAHERI will suffer irreparable injury unless the requested injunctions are granted as SECU will continue to attempt to collect, and will collect, amounts from TAHERI, will attempt to repossess the motor vehicle even though it has no security interest in the motor vehicle and Defendant will report erroneous and derogatory information to the credit reporting agencies.

58.     The public interest is best served by granting the requested injunctions. as the public has a compelling interest in preventing SECU from violating the common law of the State of Maryland in its debt collection practices, and a compelling interest in seeing the laws of the State of Maryland obeyed.

59.     TAHERI is likely to succeed on the merits of this action, as SECU has no document identifying a security interest in TAHERI's motor vehicle and no purchase order or financing agreement executed by TAHERI providing SECU any right to collect a debt from TAHERI.

## COUNT TWO
## (RESTITUTION AND UNJUST ENRICHMENT)

60.     Plaintiff re-alleges and incorporates by reference the allegations set forth above. and further alleges:

61.     By paying money to SECU on a principal balance, interest, fees, costs and other charges claimed by Defendant, TAHERI conferred a benefit of these illegally demanded charges upon SECU.

62.     SECU accepted the benefits conferred upon them by TAHERI when they accepted the money paid toward illegally assessed balances. interest, costs, fees and other

charges. Further, SECU was aware of, and had knowledge of, the benefits conferred on them, as it demanded those benefits.

63.     SECU's collection, acceptance and retention of these charges, when SECU was not entitled to the charges as a matter of law, is and was and continues to be unjust and inequitable, and SECU has not refunded the charges to TAHERI. SECU should not be permitted to retain the benefits of these illegal charges. SECU's continued withholding of the illegal charges is improper.

64.     TAHERI conferred these unjust benefits upon SECU after and as a result of SECU's misconduct as set forth herein.

## COUNT THREE
### (MARYLAND CONSUMER DEBT COLLECTION ACT)

65.     TAHERI re-allege and incorporate by reference the allegations set forth herein, and further alleges:

69.     SECU operated as a "collector" and "person" as those terms are defined by Maryland's Consumer Debt Collection Act ("MCDCA"), MD. CODE ANN., COMM. LAW §§ 14-201 et seq. MCDCA, § 14-201(b) and (d).

70.     TAHERI took part in a "consumer transaction" as that term is defined by MCDCA, § 14-201(c).

71.     MCDCA § 14-202 states that a "collector" while collecting or attempting to collect a debt may not:

> (3) Disclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false;
>
> (6) Communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor;

(8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]

72.     As a "collector" and "person" under the MCDCA, § 14-201(b) and (d). SECU and its agents and employees are prohibited from abusing or harassing TAHERI in any way enumerated in MCDCA § 14-202 while collecting or attempting to collect an alleged debt.

73.     The foregoing acts and omissions of SECU constitutes numerous and multiple violations of the MCDCA, including but not limited to each of the above-cited provisions of the MCDCA, § 14-202.

74.     As a result of SECU's harassing and abusive debt collection practices in violation of the MCDCA, SECU caused TAHERI severe emotional and psychological distress and mental anguish, as well as humiliation and embarrassment.

## COUNT FOUR
### (MARYLAND CONSUMER PROTECTION ACT)

75.     TAHERI re-alleges and incorporate by reference the allegations set out above, and alleges further:

76.     TAHERI's consumer purchase agreement as set forth herein is governed by the Maryland Consumer Protection Act ("MCPA"), MD. COMM. LAW CODE ANN. §§ 13-101 *et. seq.*

77.     The original seller and SECU falls within the definition of a "merchant" who "directly or indirectly either offers or makes available to consumers any consumer goods, consumer services, ... or consumer credit" and is thus governed by the MCPA, § 13-101(g).

78.     Section 13-303 of the MCPA prohibits unfair or deceptive trade practices in the sale and lease, and in the offer for sale and lease, of consumer goods and services, and in the extension of consumer credit.

79.     In addition, any violation of the MCDCA is a *per se* violation of the MCPA.

10

80.     The violations of the MCDCA as described herein are *per se* violations of the MCPA.

81.     By engaging in the acts and omissions set forth above and by disclosing the material facts set forth above, SECU committed unlawful trade practices, in violation of the MCPA, §§13-303(1), (2) and (3) and §§13-301(1), (2)(i), (ii) and (iv) and/or (3).

82.     Defendant's conduct caused TAHERI injury and loss.

## COUNT FIVE
### (FRAUD)

83.     TAHERI re-alleges and incorporates by reference the allegations herein, and further alleges:

84.     Auto Source and SIASI made false representations to TAHERI and to SECU as stated in more detail herein.

85.     Auto Source and SIASI knew the representations to TAHERI and SECU were false when they were made as stated in more detail herein.

86.     Auto Source and SIASI made the knowingly false representations to TAHERI and SECU for the purpose of defrauding TAHERI out of the benefit of his bargain and out of money as stated in more detail herein.

87.     TAHERI had a right to rely on Auto Source and SIASI's false representations believing the false representations were the truth as stated in more detail herein.

88.     TAHERI would not have entered into a verbal sales agreement with Auto Source and SIASI if Auto Source and SIASI would not have made the false representations as stated in more detail herein.

89.     TAHERI would not have made payments on the SECU account if Auto Source and SIASI would not have made the false representations as stated in more detail herein.

11

90.     As a direct and proximate result of Auto Source and SIASI's false representations, TAHERI suffered injury and damages.

91.     As a direct and proximate result of the Auto Source and SIASI's false representations, TAHERI suffered actual damages in the form of payments to SECU, emotional distress, has been unable to register or gain title to the motor vehicle, was greatly shocked and angered by the conduct of Auto Source and SIASI and sustained other losses and damages.

92.     Auto Source and SIASI acted with actual malice toward TAHERI.

## COUNT SIX
## (DECEIT BY NON-DISCLOSURE OR CONCEALMENT)

93.     TAHERI re-alleges and incorporates by reference the allegations herein, and further alleges:

94.     On information and belief, TAHERI avers that Auto Source and SIASI entered into a membership and financing agreement with SECU on his behalf.

95.     On information and belief, TAHERI avers that Auto Source and SIASI was issued a check on TAHERI's behalf that was not fully completed and then filled in the remaining material portions of the check.

96.     On information and belief, TAHERI avers that Auto Source and SIASI singed TAHERI's name in a blatant forgery and then countersigned the check on behalf of itself all without disclosing that it has done any of these actions in order to increase its profits. TAHERI was just one victim of Auto Source and SIASI's systematic fraud on its customers.

97.     Because it is illegal to forge another person's signature on a check or financing agreement, Auto Source and SIASI has a duty to disclose the fact that it is forging TAHERI's name on the check and financing agreement, but Auto Source and SIASI intentionally concealed from TAHERI this fact which it had a duty to disclose.

98.     Auto Source and SIASI intended to induce TAHERI to act differently than he would have acted had he known the true facts as stated in more detail herein.

99.     Because of Auto Source and SIASI's concealment of the material facts as stated in more detail herein, TAHERI acted in a manner different from how he would have acted had TAHERI known that the sale of the motor vehicle was based on fraudulent accounts and forged documents.

100.    Had TAHERI known his identity was stolen by Auto Source and SIASI through misrepresentations, failures to disclose and forgeries, he would not have entered into the verbal agreement to purchase the motor vehicle or make payments to SECU.

101.    As a result of Auto Source and SIASI's concealment of the material facts as stated in more detail herein, TAHERI sustained the losses and damages set forth herein.

102.    As a direct and proximate result of the Auto Source and SIASI's concealment, TAHERI suffered actual damages in the form of payments to SECU, emotional distress, has been unable to register or gain title to the motor vehicle, was greatly shocked and angered by the conduct of Auto Source and SIASI and sustained other losses and damages.

103.    Auto Source and SIASI acted with actual malice toward TAHERI.

**COUNT SEVEN**
**(INVASION OF PRIVACY)**

104.    TAHERI re-alleges and incorporates by reference the allegations herein, and further alleges:

105.    SIASI stole TAHERI's identity and entered into agreements with SECU on behalf of TAHERI.

106.    During the time period relevant to this Complaint, SIASI and Auto Source represented falsely to SECU that SIASI was TAHERI and repeatedly forged TAHERI's name.

13

107.    At the time SIASI and Auto Source made these misrepresentation to SECU, SIASI and Auto Source knew it was not TAHERI and that TAHERI had not signed any of the documents on behalf of himself.

108.    Instead, Auto Source and SIASI forged TAHERI's signature on numerous documents as stated herein, without his knowledge or consent.

109.    Auto Source and SIASI deposited the check that it forged on behalf of TAHERI and profited greatly under these false pretenses.

110.    TAHERI did not know that Auto Source and SIASI stole his identity and appropriated his name and likeness, which Auto Source and SIASI accomplished by (i) repeatedly forging his name and signature on membership and other agreements, and (ii) inflating the costs of the motor vehicle to profit further from this scheme.

111.    In doing so, Auto Source and SIASI intentionally took, appropriated and used TAHERI's name and likeness.

112.    Auto Source and SIASI altered, forged and submitted these fraudulent documents to SECU and its deposit bank and took the name and likeness of TAHERI for its own interests and commercial benefit and without TAHERI's knowledge, permission, consent or signature.

113.    As a result of the Auto Source and SIASI's misappropriation of TAHERI's name and likeness, TAHERI unwittingly and involuntarily was made a party to Auto Source and SIASI's fraudulent and willful violations of Maryland law, suffered actual damages in the form of payments to SECU, emotional distress upon learning that her identity had been stolen and dealing with collection actions from SECU, has been unable to register or gain title to the motor vehicle, was greatly shocked and angered by the conduct of Auto Source, SIASI and sustained other losses and damages.

114.   Auto Source and SIASI acted with actual malice toward TAHERI.

WHEREFORE, TAHERI prays that the Court:

A.   Enter judgment against SECU upon Counts One, Two, Three and Four;

B.   Enter judgment against Auto Source and SIASI upon Counts One, Five, Six and Seven;

C.   Enter a declaratory judgment establishing that SECU does not have a security interest in the motor vehicle and may not collect any claimed balance, or any interest, fees, costs or other charges on a loan account of TAHERI;

D.   The Court enter an order granting TAHERI a preliminary and permanent injunction prohibiting SECU from collecting or attempting to collect the alleged balance, or interest, fees, costs or other charges from TAHERI or from reporting any information to any credit reporting agency related to the motor vehicle;

E.   Award TAHERI two hundred fifty thousand dollars ($250,000.00) inclusive of actual damages, statutory damages, reasonable attorney's fees and costs;

F.   Award TAHERI seven hundred fifty thousand dollars ($750,000.00) for punitive damages against Auto Source and SIASI; and

G.   Award TAHERI pre-judgment and post-judgment interest.

Respectfully submitted,

Z LAW, LLC

Dated: December 21, 2016       By:_____
Cory L. Zajdel, Esq.
2345 York Road, Suite #B-13
Timonium, Maryland 21093
(443) 213-1977
clz@zlawmaryland.com

**Attorney for Plaintiff**

15

## JURY DEMAND

Plaintiff TAHERI hereby demands a trial by jury of all issues so triable.

Cory L. Zajdel